OPINION OF THE COURT
David B. Saxe, J.
On July 21, 1989, I issued a temporary restraining order in this proceeding pertaining to a one-day strike that had been *434 scheduled by Local 1199 of the Drug, Hospital & Health Care Workers Union for July 24, 1989 at a then unnamed hospital in Manhattan. A hearing pursuant to Labor Law § 807 was held at which time testimony was taken.
The application for a preliminary injunction is now before me. At oral argument, Local 1199’s counsel informed the court that the union intends to conduct a three-day strike on August 14, 15 and 16, 1989. Accordingly, the League of Voluntary Hospitals and Homes of N. Y. et al. (the League) requested a preliminary injunction; Local 1199 contends that it is improper and unnecessary.
The arguments advanced by the League are virtually the same as the ones put forward in support of the temporary restraining order. Local 1199’s argument reduced to its basic outline appears to be this: the projected three-day August labor strike is a new and separate strike and for an injunction to issue against it, a new proceeding must be commenced and a new evidentiary hearing held at which time all the elements of a section 807 injunction be proven anew. This is especially so, contends the union, since the July 24th demonstration at Mt. Sinai Hospital was peaceful and lawful, resulting in no arrests for transgression of my order.
The League argues that but for the existence of a court restraint, unlawful labor activity was inevitable.
I do not accept the interpretation advanced by Local 1199’s counsel. To do so would require me to take an unrealistic view of the facts and to interpret the statute in a strained and illogical manner.
Here, the League and Local 1199 were parties to a written collective bargaining agreement which terminated on June 30, 1989. Although negotiations have apparently been ongoing, no new agreement has been set. Various strikes have been planned and held to promote Local 1199’s position. The latest is the three-day strike set for August 14, 15 and 16, 1989. These strikes are not separate, independent and distinct labor maneuvers. Instead, they are episodic and organically connected practically and conceptually, planned and geared as a group toward promoting a favorable labor contract. As such, it would be unwise to require the petitioner to commence a new proceeding each time a union action is organized, particularly where, as here, the action planned for July 31 and addressed in the petition was canceled and rescheduled for a subsequent date. Nor can I view each episode as a distinct issue and *435 forget about the immediate past history of the litigants in determining whether a preliminary injunction is warranted. While it is reassuring to note that the last strike (at Mt. Sinai Hospital) went off without violent confrontation, the ringing words of the union’s president, Dennis Rivera, to the effect that the union would "shut down” a hospital, continue to weigh heavily in this matter. No amount of verbal spin put to those words by his attorneys can alter the clear import of that threat. While the attorneys for Local 1199 contend that Mr. Rivera was utilizing these words in the parlance and custom of labor movement officials the words are better understood in the context of the language of the street.
From testimony adduced at the most recent hearing dates, I find that at both St. Luke’s Hospital and at Mt. Sinai Medical Center that ingress and egress were interfered with on July 24, 1989 by the thousands of picketers. I further note that Mr. Rivera has never publicly disavowed his earlier threats to shut down a hospital. Mass picketing at or near a targeted hospital will have the inevitable effect of blocking ingress and egress. Where health care facilities are involved, even short-time delays may pose serious health care risks to those in immediate need of medical attention. Such delays can exacerbate illness and suffering and even result in death while the time needed to locate an alternate health care facility or pass through a group of picketers elapses. In this regard, Local 1199 has promised to engage in civil disobedience and nonviolent confrontation at a plaintiff hospital on August 14 through 16. It was testified at the hearing that Local 1199 would follow the nonviolent techniques of Martin Luther King, for example. But, if large numbers of picketers begin a sitdown at or near a targeted facility it is clear to at least this court that the cheery prophecies of the NYPD, that they can effectively control such a situation, must be questioned. The issue that I am concerned with here is protecting access to plaintiff hospitals. While the testimony of Deputy Chief Reuther and Inspector King indicates that the NYPD can maintain public order, I am not convinced, given the combination of Local 1199’s altered tactics with past threats (to shut down a hospital) that the police can adequately protect free and easy access to hospital facilities by those in need.
Where there is a threat of unlawful labor activities and the other requirements of Labor Law § 807 are satisfied, the State has the power, the right and, indeed, the obligation to protect the public from the harm that such unlawful conduct could *436 cause. (Marriott In-Flight Servs. v Rosado, 70 Misc 2d 423, affd 43 AD2d 1020 [1st Dept 1974].)
That being said, a preliminary injunction based on Labor Law § 807 is necessary and accordingly is ordered. I need not go through the finding requirements of this section as I fully elaborated upon them in my temporary restraining order and I adopt those findings here.
The scope of the preliminary injunction is as follows:
The defendants, and their officers, agents, representatives, members, servants and employees and those acting in concert with them are preliminarily enjoined and restrained pending the trial of this action from:
(1) threatening to or attempting to shut down unlawfully or otherwise unlawfully interfere with the operation of hospitals and nursing homes set out in the verified complaint in this case; (2) interfering with the ingress to and egress from the premises of the plaintiffs by the plaintiffs’ employees, or any other person or persons who may have lawful occasion to enter or leave said premises; (3) congregating, marching or picketing within 20 feet of any entrance, exit, loading dock or driveway; and (4) congregating, marching or picketing within 50 feet of any exterior emergency room exit or emergency room area in which ambulances routinely bring sick and/or injured persons for emergency treatment.
I further note that this court is not preempted by Federal law from issuing an injunction because of the existence of an NLRB injunction (see, 53 NY Jur 2d, Employment Relations, § 655).